PENDLETON, President.
If the Court should be of opinion that the judgment of the County Court was not sustainable, the question then will be, whether we can ceed to give any judgment for the plaintiff? For, as certificates are not a medium of exchange, but a specific thing, the Court are doubtful whether any judgment could be rendered for them, should they think the judgment of the County Court was erroneous; and, therefore, we wish to hear the counsel upon this point.
Marshall. I always thought the Court could not render any judgment for the plaintiff.

Cur. adv. vv.lt.

The cause was this day argued again by Duval and Randolph, for the appellant, and Marshall for the appellee.
For the appellee.
It was insisted, that in an action of debt for specific things, it was absolutely necessary to lay the value of them. That all the cases cited by the appel lant were so; and, that no case had decided the contrary. That the value here, was not ascertained; and, therefore, there was no standard, by which the certificates could be discharged. That in actions of debt for foreign money, the constant practice was, to lay the value, in order that there might be a measure by which the specific article might be discharged. That this was more necessary in the case of certificates, than- in the case of foreign money; because, the latter might always be procured at home or abroad; but, certificates by the very laws which created them, were subject to expire; and, thus it might happen, that the specific article could not be got to discharge the judgment. That the judgment did not pursue the notice. That if it was a declaration, the variance would be fatal; and, certainly it would not be pretended, that a notice, which was an innovation upon the common law, might be less definite than a declaration; or, that the judgment might vary from the notice, in a greater degree, than it could from the declaration, in a suit at common law. That the notice should state the claim, with as much precision as a declaration; and, the judgment should as strictly pursue the one as the other. That the act of Assembly did not permit the entering of judgment for the penalty; which should be for -the amount paid precisely, and that no excess was allowable. R. C. 292, [12 Slat. Larg. 269.] That this expressly confined it to the sum paid; and, therefore, that a departure could not be sustained. That the judicial part of the judgment was for the penalty, and the residue was collateral, and a mere rule of Court, Ragsdale v. Baltc, 2 Wash. 201, in this Court. Which was a complete answer to the argument, that in substance, the judgment was for the certificates; for, that case proves that the judgment is really for the penalty; and, therefore, if it were true, that the judgment could be rendered for the certificates, yet that circumstance would not help the appellant’s case. That, for the same reason, that judgment could not be rendered for the penalty, interest was not rightly allowed;* because,'it was an excess beyond the sum paid; whereas the act expressly confined the judgment to that amount. ' .
*389 ROANE, Judge.
The original bond referred to in these proceedings, was a bond from Webb and Graves to Reynolds, conditioned to be defeasanced, by the delivery-on a certain day of a specific sum in military audited certificates.
If the subject of the defeasance, had been a sum certain in money, then judgment would have been given for that sum, it being a medium of universal circulation and a just standard of value. This likewise would have been the case with regard to tobacco; for, this commodity being in general circulation and a permanent staple of the country, the Legislature has, by an express provision, given it some of the qualities of money; as, for instance, that tobacco contracts shall be discharged in kind.
But, with respect to military audited certificates, the Legislature has made no such provision; and such an effect will by no means result from their general nature and quality.
These certificates were not in the hands of the people generally, but only of those who had composed the revolutionary army and a few speculators; the holders, in both of which descriptions of men, calculated more on the future than the present value thereof; they were merely of a temporary existence, and are only to be considered as a document or bond from the public, for the payment of a certain sum.
On these accounts, and because of the very great fluctuation in the value of such certificates, they are a very improper medium for estimating damage. By such a medium, although a man might have performed a contract by a purchase with 501. in money at a given day, it has happened that, within a very few months afterwards, quadruple that sum would not have indemnified him.
Thus, by departing from a stable medium and adopting one liable to be affected a thousand ways; and, especially, by the monopoly and artifice of the speculators, the greatest injustice would ensue. Nay more, it might happen, and in fact has happened, that this medium should be called out of circulation, and thus an impossibility be created of performing the contract in specie.
For these Reasons, it has never been the policy of the law that a breach of a contract, like the present, should be remedied, in any other way than by a just estimation of damages in money. The present contract was just the same as if it had been to deliver any other kind of com *390 modity; with this difference, however, that with respect to most articles, a specific payment would be less unjust; because they are more permanent in their value ‘than the kind of certificates now in question.
The present case, then, is that of a mere collateral bond, (according to the general acceptance of this country;) and the undertaking of the security goes to the damages sustained in case of non-performance, to be estimated in money, and a Court of Law has no power to award a delivery of the certificates themselves.
The question then is, whether as the principal here has not and could not by the policy of the law, have bound himself to produce the certificates themselves by a general obligation like the present; and, as the surety has not undertaken further or otherwise than the principal himself had undertaken, the appellant shall, in consequence of a judgment, which ought not to have been rendered, (to which the principal was no party and which the security might have reversed,) be put in a better situation and be enabled to recover the certificates themselves ?
Let me premise, that I do not meddle with that judgment; it must, for any thing I say, remain in full force: But, I am compelled to take a view of the subject as connected with the present question, and collaterally to say, that it was not warranted by the agreement in question, under the laws of the country.
If my premises are correct, it might with as much truth he argued, that a judgment against a security for tobacco, on a bond conditioned for the payment of money, if a Court could be found to render such a judgment, would justify that surety in recovering tobacco from the principal.
Such then, would be the consequence of awarding payment against the principal, by having regard only to what he has actually paid to the creditor, and keeping out of sight his original engagement. Yet, I suppose in that case, that a payment by the surety, of what was not contracted to be paid in the original document, would not be a payment by him as security; and that a third person by his act, nay more, that a Court of Justice by a judgment to which the principal was no party, could not bind him to pay that which he had never contracted to pay. And this is a fortiori, where the payment is to be in a medium not recognised as a just medium of circulation by the laws of the country.
*391 This, however, might be removed by requiring in the judgment against the security, which is to warrant a recovery against the principal, a conformity to the original engagement; and this would impose no hardship on the security.
This reasoning is of a general nature; but it is'supposed it will lose none of its force when applied to a recovery in the second instance, by a summary proceeding on a motion.
Let us next sée, whether we are imperiously driven into such a construction by the act of 1786, [c. 15, 12 Stat. Larg. 268; R. C. c. 116, p. 460. ed. 1819,] for relieving securities? It must, indeed, be a positive and imperious statute, which would induce me to sustain such a judgment, in opposition to such principles.
That act, reciting as a grievance the delays incurred by sureties in getting reimbursement from the principals, provides in future a more expeditious mode of recovery; and this it is supposed was the only object of that law, as it is the only one which is stated, or which occurs as necessary to be attained.
If this, then, be the case, will a Court of law acting in lieu of a jury, give a judgment which it is supposed would never have been authorised by the verdict of a jury? Will such a Court, exercising the equitable functions of a jury, give a ruinous judgment for that which was never in the contemplation of any of the parties; merely because, by an ex parte decision (possibly had by collusion,) it was supposed to be the subject for which judgment ought to be given; when in fact it appears to be such a judgment, as, with reference to the contract and law, no Court ought to have rendered? I believe no jury could be found to render such a verdict.
I suppose it will readily be admitted, that that construction of a statute shall be preferred, which will not tend to bind a person by a judgment to which he was no party, which will not tend to saddle him with that he never contracted to pay; and which will not put it in the power of a third person to charge him, collaterally and by a side wind, further and otherwise than his original creditor could charge him directly, in consequence of his real undertaking. Although, it is not necessary for meto enquire, whether a Legislature has power to contravene these principles; yet, it is enough for my purpose to say, that, if they be equivocal, the construction, which accords with them, shall prevail.
*392 In the body of the act of 1786, there is nothing to drive us from these principles. I have already said that the intention of the act was only to expedite the recovery.
The first clause of the act is, that where judgment hath been entered up against any person as security, and the amount of such judgment hath been paid by him, it shall be lawful for such security to obtain judgment by motion, for the full amount of what he shall have paid, &c. This clause being general, would be taken to refer to the undertaking of the plaintiff in the motion, as well as to the judgment; but this construction is further fortified, by the terms judgment against Mm as security, and it is clear that a judgment against a man, not warranted in his character of security, does not come within the meaning of the clause. The general expression or other thing-, in the next clause, is referrable to the condition of the bond, and not to the judgment, so as to authorise a judgment for such other thing. As, for instance, in the present case, the condition of this bond is to pay certificates; and the meaning of the clause is, that a security to a bond of this kind may recover from his principal; but the general law, as to the particular subject of the recovery, is entirely unaffected by this act. This opinion is enforced by the latter part of the same clause, where it is provided, that in ease of a payment by one obligor, he may recover and sue out execution against the other obligors for their respective proportions of the said debt; dropping the terms, or other thing, before used.
Thus then, the true construction" of the act does not assail the principles I have before endeavored to lay down; to say the least, it is silent on the subject; and those principles, deemed in themselves to be impregnable, must control the present case.
The result is, that the present appellant (not having in the former action ascertained in money and paid the damages sustained by the failure to deliver the certificates; and for which alone he was bound as security; but having suffered and paid a judgment for certificates, with respect to which in themselves after the day, of delivery the appellee was not chargeable) has not made such a case as to entitle him under the act of 1786, to recover the said certificates or even the penalty of the bond: The former for the reasons already given: The latter, because among other, reasons, the penalty has not been paid or discharged by the appellant.
*393 Whafc remedy the appellant may have in the premises, is not necessary for me to enquire; but for the reasons now given, the judgment of the Court' of Hustings was erroneous, in not over-ruling the motion for the judgment; and that of the District Court was also erroneous, in not correcting that of the Court of Hustings, according to the idea I have just stated; but- instead thereof, giving a judgment for the certificates.
FLEMING, Judge.
It is objected, that the originaljudgment in the Court of Hustings against Graves, as security for Webb, was erroneous, as the* damages, for breach of the condition of the bond were assessed in certificates and not in money; and, consequently, that a 11 the proceedings subsequent thereto are likewise erroneous.
But whether the original judgment was erroneous or not, appears to me to be wholly immaterial in the present stage of the business, as it was acquiesced in by both Graves and Webb.
Graves as Webb’s security, paid the amount of the judgment for 3975/. 8s. 9d. in military certificates, carrying an interest of six per cent, per annum; and it appeared, on the trial of Graves’s motion in the Court of Hustings, that Webb had reimbursed him upwards of 3200/. having reduced the balance to 1771/. 12s. It/. Therefore, had the Court given judgment for that sum, I should have thought it right; as it would then have been for the real balance due to Gr.aves; and agreeable to the notice given to Webb.
The act of Assembly, to empower securities to recover damages in a summary way, passed in the year 1786, and re-enacted in 1792, makes use of very extensive language; for, it declares, that it shall be lawful for the security or securities to obtain judgment by motion against the principal obligor or obligors, his, her, or their heirs, &e. for the full amount of what shall have been paid by the security or securities,'&c.; (which would seem to include whatever was recovered against the security.) And in the next section of the act, which gives a remedy to one security against the others, in order to compel them to bear an equal proportion of the debt recovered, the words are, e ‘ where there shall be two or more securities jointly bound, &c. in any bond, bill, note, or other obligation for the payment of money or other thing.” By which the Legislature probably had in contemplation military and other certificates; as there were at that time and long since, vast. *394 quantities of them in circulation; and in which great numbers of people were daily speculating. At all events, the words are large enough to include a remedy, in kind, for whatever was recovered against the security; and, therefore, I think the Court should adhere to that construction.
But I am of opinion, that neither the above recited act of Assembly, nor the notice given to Webb, authorised a judgment on motion for the penalty of the bond; which differs from the first judgment as well in the sum, as in the subject; it being for specie, instead of certificates.
It is objected to the judgment of the District Court, that interest is given on the certificates. But the judgment, as I understand it, is in fact for audited certificates, carrying, on the face of them, an interest of six per cent.
Upon the whole, I think the judgment of the District Court is right; and that it ought to be affirmed.
CARRINGTON, Judge.
I consider the reversal by the District-Court to be right in substance, but not for the reason already given. The notice was intended merely to inform the defendant on what judgment the plaintiff meant to proceed; and if it was such, that the plaintiff could not mistake the object of the motion, it was sufficient; especially, in such a case as this, where it does not appear that Reynolds had two judgments against Graves, on account of the defendant; who, therefore, could not have been mistaken, in the object of the notice; and, consequently, I think there was no cause to reverse the judgment, upon that ground.
But for another reason, the judgment of the Hustings Court, was in my opinion wrong and ought to have been reversed; namely, that it is given for the penalty of the original bond; which was merged in the first judgment and could not be acted on again. Therefore, the plaintiff in the motion should only have recovered ¿he full amount paid by him as security; for, that was the sum due; and judgment ought not to have been entered for any other. Upon that ground, then, I think the District Court did right in reversing the judgment.
It remains to be considered, whether the final judgment of the District Court can be supported?
The judgment is for 1771/. 12s. 1 d. in audited certificates-.i and in an action, I own I should have difficulties; as I am disposed to think, that the value, in that case, ought *395 to be settled in money by a jury; and found in damages. But the act of 1786 is a remedial law, made for the immediate relief and benefit of securities: to restore to them in a speedy manner, the subject they had lost by their engagements. It enacts, that they shall by motion recover the full amount of what shall have, been paid; and in another clause giving remedy to one joint security against another, it declares that the security, who has paid, shall recover against the other his proportion of money or olher thing paid: Which terms necessarily comprehend, whatever the judgment against him shall have been rendered for. The words the fall amount paid, and money or other thing paid, must include every species of property for which the judgment was given; and they cannot be satisfied without. So, that, comparing the remedy with the spirit and intention of the law, I think the judgment of the District Court right; and that it ought to be affirmed.
If this should bind hard on Webb, on account of the scarcity of certificates, he will always have a Court of Equity open to him, where he may be relieved; as formerly was done in cases of judgments for the penalty of bonds.
PENDLETON, President.
I agree with the first Judge, who gave his opinion, as to the entering judgment for certificates instead of money in the first suit; because, certificates are not to be considered as a circulating medium for which judgment ought, in ordinary cases, to be rendered. The first judgment, therefore, might certainly have been reversed, if the attempt had been made.
But this not having been done, the question is, whether the Court can enquire into that point upon the present record?
And I think we cannot; for, it remains unreversed and in full force. Therefore, for any.thing which the Court can now say, to the contrary, it must be considered as right in point of law.
Neither is there any room to impeach it on the ground of collusion; because, the suit was adversary and the trial by jury: whereas, the collusion contemplated by the act of Assembly was that of a judgment by confession.
The question then is, whether Graves having paid certificates specifically, a judgment can be entered for him, under the act of Assembly, for the same specific thing ?
The clause, giving the remedy against the principal, is for the amount paid, without saying whether the payment shall be in money, tobacco, or other thing recovered; and, *396 on this, a doubt might arise, whether it must not be con» fined to money or tobacco ?■ the only mediums, for which the laws had theretofore authorised the Courts to enter judgment. But, the next clause, giving the like remédy for contribution, to a security against his associates, permits it to be done, upon a judgment for money or other thing; and, since I cannot suggest a reason for any distinction between the two cases, I will add this particular description to the general words of the first clause; and, will read it thus: “ for the full amount of the money or thing paid by the security:” Which will justify the judgment of the District Court
It is not unlikely, that the Legislature, reflecting on the great quantity of these papers, which were then in circulation and the subject of daily contracts, might have looked forward to instances where the security had actually paid the certificates; and, purposely provided for the case.
The case of a tobacco judgment on a money bond does not apply; because, that would be a departure from the contract; but, the judgment in the present case has pursued the bond, and is consistent with the contract. So, that the defendant is not compelled to pay a different article from that which he originally contracted for.
The judgment of the District Court is to be affirmed.